UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JORDEN ANTHONY POWELL,

                Petitioner,           Case No. 1:15-cv-549

v.                             Honorable Paul L. Maloney

THOMAS ANTHONY MACKIE,

                Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Jorden Anthony Powell is incarcerated at the Michigan Reformatory in Ionia, Michigan. On March 22, 2012, a Macomb County Circuit Court jury, after a three-day trial and about thirty minutes of deliberation, convicted Petitioner of conspiracy to commit first-degree murder, MICH. COMP. LAWS § 750.316(1)(a), and first-degree home invasion, MICH. COMP. LAWS § 750.110a(2). On May 2, 2012, the court sentenced Petitioner to life imprisonment with the possibility of parole on the conspiracy charge concurrent to a term of two years, six months to twenty years on the home invasion charge.

Petitioner appealed his convictions to the Michigan Court of Appeals. The court of appeals affirmed the trial court by unpublished opinion dated February 4, 2014. *People v. Powell*, Nos. 310439, 310440, 2014 WL 467270 (Mich. Ct. App. Feb. 4, 2014).

Petitioner applied for leave to appeal to the Michigan Supreme Court.  On July 29, 2014, that court denied leave.  *People v. Powell*, 850 N.W.2d 480 (Mich. 2014). Petitioner did not file a petition for certiorari in the United States Supreme Court.

On May 27, 2015, Petitioner filed his petition for writ of habeas corpus in this Court raising three issues:

I.    The trial court erred in failing to instruct the jury that it should view with caution the testimony of Mallorie Wilson-Strat, who was an undisputed accomplice.

II.   The defendant was denied his state and federal constitutional right to the effective assistance of counsel because trial counsel failed to request a cautionary instruction on the unreliability of accomplice testimony.

III.  The defendant's right of confrontation was violated by admission into evidence of hearsay statements from David Clark that were not statements of a coconspirator in furtherance of a conspiracy.

(Pet., ECF No. 1, PageID.7, 10, 13.)  On December 4, 2015, Respondent filed an answer to the petition,  (ECF No. 5.), along with the state-court record, pursuant to Rule 5, Rules Governing § 2254 Cases, (ECF No. 6).[1]  Respondent contends that Petitioner's first issue is procedurally defaulted and the rest have no merit.  Upon review and applying the standards required by the Antiterrorism and Effective Death Penalty Act

---

[1]The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be referenced as follows:

| | |
|---|---|
| June 10, 2011 Preliminary Examination Transcript | (Prelim. Exam. Tr., ECF No. 6-2, PageID.__) |
| June 17, 2011 Pretrial Hearing Transcript | (Pretrial Hr'g Tr., ECF No. 6-3, PageID.__) |
| March 20, 2012 Trial Transcript (Volume 1) | (Trial Tr. I,  ECF No. 6-4, PageID.__) |
| March 21, 2012 Trial Transcript  (Volume 2) | (Trial Tr. II, ECF No. 6-5, PageID.__) |
| March 22, 2012 Trial Transcript  (Volume 3) | (Trial Tr. III, ECF No. 6-6, PageID.__) |
| May 2, 2012 Sentencing Transcript | (Sentencing Tr., ECF No. 6-7, PageID.__). |

of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA), I find that Petitioner's claims are

without merit.  Accordingly, I recommend that the petition be denied.

## Factual background

The Michigan Court of Appeals offered a concise synopsis of the facts underlying

Petitioner's criminal prosecution:

> This case stems from a conspiracy involving Mallorie Wilson–Strat,
> Christina Sears, Kevin Sears, David Clark, and defendant to have Kevin
> Sears's wife murdered.  Wilson–Strat was the girlfriend of Kevin Sears
> at the time, and Christina Sears is Kevin's sister.  Kevin Sears and his
> wife were in the process of obtaining a divorce when the conspiracy
> developed.  Defendant and Clark were solicited by Wilson–Strat to
> commit the murder, with Christina Sears approving of the solicitation.
> Defendant and Clark failed to carry out the murder, as planned, during
> a home invasion of the victim's house after Wilson–Strat dropped them
> off at that location.  Defendant and Clark were thwarted by a child-proof
> bedroom door handle and then left the victim's home, taking her purse
> and dropping a knife along the way, before being picked up by
> Wilson–Strat.  However, the conspiracy to murder Kevin Sears's wife
> continued, but fortunately an undercover officer became involved through
> an anonymous individual.  And the officer was solicited by Wilson–Strat
> to commit the murder, again with the approval of Christina Sears.  The
> undercover officer's involvement eventually led to the arrest of those
> involved in the conspiracy, including defendant.

*Powell*, 2014 WL 467270 at *1.[2]

Only five witnesses testified at Petitioner's trial: the state trooper who

responded to the home invasion call, the state trooper who recovered the stolen purse,

the victim, Mallorie Wilson-Strat, and the undercover officer who ultimately foiled the

plot.  The prosecutor also played a long video of the initial police interview of

---

[2]Each of the five conspirators is serving a life term of imprisonment with the
Michigan Department of Corrections.

Petitioner upon his arrest.  There can be little question, however, that the testimony of Wilson-Strat was an important part of the prosecutor's case.  That testimony lies at the heart of Petitioner's first and second habeas issues.

The testimony of the undercover officer, John Glass, included the reading of texts sent from David Clark to Petitioner and Petitioner to David Clark, as recorded on David Clark's telephone.  That testimony lies at the heart of Petitioner's third habeas issue.

## Discussion

### I.    AEDPA standard

This action is governed by the AEDPA.  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult

to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3

- 5 -

(quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

II.    <u>Whether a cautionary instruction regarding accomplice testimony was required</u>

Petitioner contends that the jury instructions were flawed because they did not include Michigan's model criminal jury instruction regarding accomplice testimony:

(1)    You should examine an accomplice's testimony closely and be very careful about accepting it.

(2)    You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor's using an accomplice as a witness.  You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

(3)    When you decide whether you believe an accomplice, consider the following:

(a)    Was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, biases, or for some other reason?

(b)    Has the accomplice been offered a reward or been promised anything that might lead [him / her] to give false testimony?

(c)    Has the accomplice been promised that [he / she] will not be prosecuted, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced [his / her] testimony?

[(d)    Does the accomplice have a criminal record?]

(4)    In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.

(Pet.'s Mich. Ct. App. Br., ECF No. 6-8, PageID.890); Michigan Model Criminal Jury Instruction 5.6. Although the trial court did not read the accomplice instruction, the court did instruct the jury regarding its role in assessing the credibility of witness testimony:

As I said before, it is your job to decide what the facts of this case are. You must decide which witnesses you believe and how important you think their testimony is. You do not have to accept or reject everything a witness said. You are free to believe all, none or part of any person's testimony. In deciding which testimony you believe, you should rely on your common sense and everyday experience. However, in deciding whether you believe a witness's testimony you must set aside any bias or prejudice you may have based on the race, gender or national origin of the witnesses.

Now, there is no fixed set of rules for judging whether you believe a witness, but it may help you to think about these questions: Was the witness able to see or hear clearly? How long was the witness watching or listening? Was anything else going on that might have distracted the witness? Did the witness seem to have a good memory? How did the witness look and act while testifying? Did the witness seem to be making

an honest effort to tell the truth or did the witness seem to evade the questions or argue with the lawyers? Does the witness's age and maturity affect how you judge his or her testimony? Does the witness have any bias, prejudice or personal interest in how this case is decided? Have there been any promises, threats, suggestions or other influences that affected how the witness testified? In general, does the witness have any special reason to tell the truth or any special reason to lie? All in all, how reasonable does the witnesses [sic] testimony seem when you think about all of the other evidence in the case.

Sometimes the testimony of different witnesses will not agree and you must decide which testimony you accept. You should think about whether the disagreement involves something important or not and whether you think someone is lying or is simply mistaken. People see and hear things differently and witness's [sic] may testify honestly but be wrong about what they thought they saw or remembered.

It is also a good idea to think about which testimony agrees best with the other evidence in the case. However, you may conclude that a witness deliberately lied about something that is important to how you decide this case. If so, you may choose not to accept anything that witness said. On the other hand, if you think the witness lied about some things but told the truth about others, you may simply accept the part you think is true and reject the rest.

(Trial Tr. III, ECF No. 6-6, PageID.816-818.)

The Michigan Court of Appeals rejected Petitioner's claim on procedural grounds: "Defendant expressly approved the instructions as given[; t]hus, defendant waived appellate review of his instructional argument." *Powell*, 2014 WL 467270 at *1. Respondent urges the Court to rely on this procedural default to dispose of Petitioner's claim. In this instance, however, because Petitioner attempts to justify his default with a claim of ineffective assistance of counsel, the Court will consider the claim on its merits because it "'present[s] a more straightforward ground for decision.'"

*Young v. Trombley*, 435 F. App'x 499, 502 (6th Cir. 2011) (quoting *Arias v. Hudson*, 589

F.3d 315, 316 (6th Cir. 2009)).[3]

The *Young* court rejected the notion that a cautionary accomplice instruction,

by its very nature, was of special constitutional significance:

> Neither the United States Supreme Court nor this court has "requir[ed] accomplice instructions as a general matter." *Scott v. Mitchell*, 209 F.3d 854, 883 (6th Cir. 2000). Instead the Supreme Court has consistently held that the only question to be answered in a habeas challenge to a jury instruction is "whether the ailing instruction [or the omission of a requested instruction] by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Furthermore, that instruction, or the absence of an instruction, "must be considered in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing *Cupp*, 414 U.S. at 147).

*Young*, 435 F. App'x at 503 (parallel citations omitted). The *Young* court then reviewed

its prior decisions regarding accomplice testimony:

> [W]hen presented in *United States v. Carr*, 5 F.3d 986, 992 (6th Cir.1993), with a challenge to a district court's failure to instruct the jury

---

[3]The *Young* court resolved the same claim that Petitioner presents here:

Young contends that he was denied due process of law by the trial court's failure to give a cautionary instruction to the jury regarding the unreliability of accomplice testimony. He concedes that his trial counsel failed both to request such an instruction and to object to the instructions that were given by the trial judge. In the face of the state's claim that such failures constitute a procedural default of the issue, the petitioner nevertheless argues that not insisting upon the instruction amounted to ineffective assistance of counsel and that such deficient representation by his lawyer excused his failure to comply with any state contemporaneous-objection rule.

*Young*, 435 F. App'x at 502.

specifically "regarding the inherently questionable credibility of those witnesses who had earlier pled guilty to related charges," we noted:

> The court's instruction adequately informed the jury regarding the credibility of witness testimony, and so we are not troubled simply because the court chose not to explicitly highlight the credibility problems inhering in accomplice testimony. The instructions alerted the jury to the various considerations that it should take into account in weighing testimony, and it had an ample basis for rejecting the testimony of the accomplice witnesses if it had chosen to do so.

Similarly, in *Goff v. Bagley*, 601 F.3d 445 (6th Cir. 2010), another habeas petitioner argued, as does Young, "that the trial court erred in failing to give a specific instruction to the jury regarding the credibility of testimony by accomplices and informants and that . . . counsel was ineffective for failing to raise this issue . . . ." *Id.* at 469. Relying upon *Carr* and *Scott*, the *Goff* majority found that the instructions given in that case "adequately informed the jury regarding the credibility of witness testimony" and "alerted the jury to the various considerations that it should take into account in weighing testimony." *Id.* at 470 (internal quotation marks omitted). Those instructions, in pertinent part, provided:

> You are the sole judges of the facts and the credibility of the witnesses and the weight of the evidence. To weigh the evidence you must consider the credibility of the witnesses. You will apply the tests of truthfulness which you apply in your daily lives. These tests include the appearance of each witness upon the stand, their manner of testifying, the reasonableness of their testimony, the opportunity they had to see, hear, and know the things concerning which they testified about, their accuracy of memory, their frankness or lack of it, their intelligence, their interest and bias, if any, together with all the facts and circumstances surrounding their testimony. Applying these tests you will assign to the testimony of each witness such weight as you deem proper.

> You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief.

> *Id.* at 470 (emphasis in original).  Because those instructions thus
> satisfied the criteria set out in *Scott*, we concluded that "the failure to
> give a specific accomplice instruction did not violate Goff's constitutional
> rights."  *Id.*

*Young*, 435 F. App'x at 503.  With the template of constitutionally sufficient

instructions from *Scott* and *Goff* before it, the court considered whether *Young*'s

instructions were acceptable.

> The jury instructions given at Young's trial contained the same directives
> as did the charge approved in *Goff* . . . .  Because the totality of [Young's]
> "instruction both informs the jury regarding credibility and alerts the
> jury to what is properly considered when determining credibility," "the
> failure to give a specific accomplice instruction [also] did not violate
> [Young's] constitutional rights." *Goff*, 601 F.3d at 470.  Consequently, the
> Michigan state court's determinations consistent with such a conclusion
> cannot be considered unreasonable.

*Young*, 435 F. App'x at 504-505.  The instructions deemed appropriate in *Young* are

word-for-word identical to the instructions given at the end of testimony in Petitioner's

trial.  *Compare Young*, 435 F. App'x at 504, *and* Trial Tr. III, ECF No. 6-6, PageID.816-

818.   Petitioner has failed to show that the state appellate court's determinations are

contrary to, or an unreasonable application of, clearly established federal law.

Accordingly, he is not entitled to habeas relief.

III.   Whether counsel was ineffective in failing to request the accomplice
       instruction

Whether or not an accomplice instruction was constitutionally required,

Petitioner contends his counsel was ineffective for failing to request an instruction that

would highlight the suspect nature of Mallorie Wilson-Strat's damning testimony.  The

Michigan Court of Appeals disagreed:

- 11 -

Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v. Grant*, 684 NW2d 686 (2004). To warrant reversal based on ineffective assistance of counsel, a defendant must overcome the strong presumption that counsel's performance constituted sound trial strategy and establish (1) that counsel's performance was deficient, i.e., that it fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense, i.e., that a reasonable probability exists that, but for counsel's error, the result of the proceeding would have been different. *People v. Carbin*, 623 N.W.2d 884, 889 (2001); *People v. Toma*, 613 N.W.2d 694, 703-704 (2000).

Defendant has failed to show that trial counsel's representation fell below an objective standard of reasonableness, nor has he established the requisite prejudice. Defendant's position at trial was that he never intended to kill Kevin Sears's wife; rather, he simply intended to squeeze as much money out of Wilson–Strat as possible, pretending to play along. In the context of that defense, the value of the cautionary accomplice instruction would have been minimal. Moreover, a significant portion of CJI2d 5.6 directs the jury to consider whether the accomplice's testimony was influenced by rewards, prosecutorial promises, or other self interests that may have resulted in fabricated testimony. Wilson–Strat did not receive any rewards for her testimony, nor was she the beneficiary of any plea agreement; therefore, a juror listening to CJI2d 5.6, had it been given, may have been more inclined to believe the account of events proffered by Wilson–Strat. On that note, and considering the other evidence of guilt against defendant, we cannot conclude that a reasonable probability exists that, but for any assumed error by trial counsel, the result of the proceeding would have been different. In further support of our conclusion that defendant was not prejudiced, the trial court generally instructed the jury that when evaluating a witness's credibility, it should consider whether the witness had any bias, prejudice, or personal interest in the outcome of the case, whether there had been any promises that would affect how the witness testified, and whether the witness had any special reason to tell the truth or lie. In sum, reversal is unwarranted.

*Powell*, 2014 WL 467270 at *2 (parallel citations omitted).

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court

established a two-prong test by which to evaluate claims of ineffective assistance of

- 12 -

counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Although the Michigan Court of Appeals relied upon state authority for the relevant standard, *Carbin*, 623 N.W.2d at 889 and *Toma*, 613 N.W.2d at 703-704, those cases, in turn, rely upon *Strickland*.  Thus, it cannot be said that the state applied a standard contrary to clearly established federal law.

Moreover, the appellate court's application of the *Strickland* standard was reasonable.  Petitioner's counsel pursued a trial strategy of separating Petitioner and Clark, on the one hand, from Kevin Sears, Christina Sears, and Wilson-Strat, on the

- 13 -

other hand.  As evidenced by counsel's closing argument, he cast Sears, Sears, and Wilson-Strat as the conspiratorial murderers and Petitioner and Clark as the opportunistic rogues who intended to do nothing more than rip-off the conspirators. (Trial Tr. III, ECF No. 6-6, PageID.800-808.)  Indeed, counsel went so far as to suggest that the failure of Petitioner and Clark to effect the murder was not bumbling incompetence, but intentional failure that permitted them an opportunity to scam more money from Wilson-Strat and even save the victim's life.  (*Id*.)  To ask the jury to view Wilson-Strat as Petitioner's accomplice, rather than Petitioner's victim, would entirely defeat that strategic approach.

Additionally, even if it were desirable to view Wilson-Strat as an accomplice, the accomplice instruction did not favor Petitioner when one examines the circumstances of Wilson-Strat's complicity.  As the court of appeals noted, Wilson-Strat was offered nothing for her testimony, her testimony was not suspect in the sense that it attempted to shift responsibility from her to Petitioner, and no evidence of a prior criminal record was offered.  If the jury had been asked to measure Wilson-Strat's testimony against the cautions of the accomplice instruction, it may well have bolstered her credibility.

Finally, the court of appeals' conclusion that there was no prejudice is also reasonable because, as detailed above, the standard instructions given invited the jury to conduct the same inquiry regarding credibility.  Petitioner has failed to demonstrate that the state appellate court's resolution is unreasonable under clearly established federal law.  That failure precludes habeas relief.

IV.    Whether the introduction of Clark's text messages violated the

- 14 -

<u>Confrontation Clause</u>

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. CONST., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Petitioner contends the text messages from Clark to Petitioner are out-of-court testimonial statements.  The Michigan Court of Appeals rejected Petitioner's contention:

> A statement "is testimonial if the declarant should reasonably have expected the statement to be used in a prosecutorial manner and if the statement was made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial." *People v. Dendel (On Second Remand)*, 797 N.W.2d 645, 649-650 (2010).  On the other hand, statements are nontestimonial when they are "made informally to an acquaintance, not during a police interrogation or other formal proceeding . . . or under circumstances indicating that their 'primary purpose' was to 'establish or provide past events potentially relevant to later criminal prosecution.'" *People v. Taylor*, 759 N.W.2d 361, 367 (2008), citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004), and *Davis v. Washington*, 547 U.S. 813, 822 (2006).
>
> In *Taylor*, 759 N.W.2d at 366, our Supreme Court held that, "[w]hile nontestimonial statements are subject to traditional rules limiting the

- 15 -

admissibility of hearsay, they do not implicate the Confrontation Clause." Here, Clark and defendant sent each other numerous text messages in which they discussed the home invasion and the ongoing conspiracy to kill Kevin Sears's wife.  The text messages sent by Clark to defendant were simply not testimonial in nature.  Thus, the Confrontation Clause was not implicated.

*Powell*, 2014 WL 467270 at *3 (parallel citations and footnote omitted).

The *Crawford* court eschewed drawing any precise lines to distinguish that which is testimonial from that which is not.  *Crawford*, 541 U.S. at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'").  Other courts, however, considering whether communications between co-conspirators in furtherance of the conspiracy are "testimonial," have uniformly held that such communications are not testimonial.   *See, e.g., United States v. Martinez*, 430 F.3d 317, 328-329 (6th Cir. 2005) (citing *United States v. Hendricks*, 395 F.3d 173, 183–84 (3d Cir. 2005); *United States v. Lee*, 374 F.3d 637, 644 (8th Cir. 2004); *United States v. Robinson*, 367 F.3d 278, 292 n. 20 (5th Cir.) (2004)); *United States v. Tragas*, 727 F.3d 610, 615 (6th Cir. 2013) (holding such communications are "categorically non-testimonial"); *United States v. Farhane*, 634 F.3d 127, 160-163 (2d Cir. 2011); *United States v. Sullivan*, 455 F.3d 248, 258 (4th Cir. 2006); *United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006); *United States v. Franco-Beltran*, 229 F. App'x 592, 594-595 (9th Cir. 2007);  *United States v. Townley*, 472 F.3d 1267, 1274-1275 (10th Cir. 2007); *United States v. Underwood*, 446 F.3d 1340, 1346-1348 (11th Cir. 2006).[4]

---

[4]Even the *Crawford* Court, despite declining to draw lines, noted that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial–for example, . . . statements in furtherance of a conspiracy." *Crawford*,

Petitioner objects to the characterization of the text messages as being "in furtherance of the conspiracy."  But, the trial court and the court of appeals concluded the messages were "in furtherance of the conspiracy" and, thus, fell within the parameters of Michigan Rule of Evidence 801(d)(2)(E) and outside the definition of inadmissible hearsay.  (Pretrial Hr'g Tr., ECF No. 6-3; Trial Tr. III, ECF No. 6-6, PageID.732-735) ; *Powell*, 2014 WL 467270 at *3 ("[T]he text messages fell within the parameters of MRE 801(d)(2)(E).").  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).  For that reason, the Court is not free to simply disregard the state appellate court's conclusion regarding the nature of text messages between the conspirators.

Because the messages are not testimonial and not hearsay, the Confrontation Clause is not implicated.  The state appellate court's determination of the issue, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

### Certificate of Appealability

---

541 U.S. at 56.  Moreover, the Crawford Court cited with approval its earlier decision in *Bourjaily v. United States*, 483 U.S. 171 (1987), where the Court rejected a Confrontation Clause challenge to the admission of co-conspirator statements. *Crawford*, 541 U.S. at 58.

- 17 -

Even though I have concluded that Petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted.   A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that a certificate of appealability should be denied.

## Recommended Disposition

- 18 -

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.

Dated:  July 5, 2017              /s/  Phillip J. Green
                         PHILLIP J. GREEN
                         United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).